UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS MORRISSEY,

                              Plaintiff,

              v.

VERIZON COMMUNICATIONS INC.,

                              Defendant.

**ECF CASE**

**MEMORANDUM OPINION &
ORDER**

10 Civ. 6115 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

              The Complaint in this action alleges age discrimination in violation of the New

York State and City Human Rights Laws.  Plaintiff Dennis Morrissey worked as a technician for

Defendant Verizon Communications, Inc. ("Verizon") between 2005 and 2009.  In 2009,

Verizon terminated Plaintiff's employment as part of a reduction in force.  Morrissey alleges that

Verizon terminated him because of his age, and claims that although Verizon was obligated –

under a collective bargaining agreement with his union – to lay off technicians according to

seniority, it ignored seniority in order to lay off older technicians.

              Morrissey filed this action on July 16, 2010, in Supreme Court of the State of

New York, New York County.  On August 16, 2010, Verizon removed the action to federal

court, asserting that Morrissey's claims are preempted by Section 301 of the Labor Management

Relations Act ("LMRA").  (Docket No. 1, Notice of Removal ¶¶ 5-8)  Morrissey now moves to

remand this action to state court.  For the reasons stated below, the motion to remand will be

denied.

## BACKGROUND

              In September 2005, Verizon hired Plaintiff to work as a technician in its facility at

540 Washington Street in Manhattan.  (Cmplt. ¶¶ 4, 5, 6)  In September 2009, when Morrissey's

employment was terminated, he was 59 years old.  (Cmplt. ¶¶ 3, 4)  Although Plaintiff was not

hired by Verizon until 2005, the Complaint asserts that "[b]y virtue of plaintiff's past

employment with other communications companies purchased by Verizon, plaintiff's credited

seniority with Verizon was 14 years."  (Cmplt. ¶ 4)  Morrissey claims that he "had the most

credited seniority" of the four technicians working at Verizon's Washington Street facility.

(Cmplt. ¶ 7)

        The Complaint further alleges that "Verizon was obligated to lay off technicians

according to seniority."  (Cmplt. ¶ 11)  Although the Complaint does not cite to a collective

bargaining agreement ("CBA"), it appears undisputed that the premise for this claim is a CBA

between Verizon and the Communications Workers of America.  See Pltf. Reply Br. 4-5.

        In September 2009, Verizon conducted a reduction in force and terminated

Morrissey's employment.  (Cmplt. ¶¶ 10, 12)  In doing so, Morrissey alleges that Verizon

violated its obligation to lay off technicians according to seniority.  The Complaint further

alleges that Verizon's treatment of Morrissey was part of a larger pattern of Verizon

"intentionally ignor[ing] its seniority list in order to lay off older technicians."  The Complaint

asserts that Plaintiff's employment was terminated because of his age in violation of the New

York State and City Human Rights Laws.  (Cmplt. ¶¶ 13-16)

**DISCUSSION**

**I.**       **THE MOTION TO REMAND WILL BE DENIED**

        Verizon removed this action to federal court on the ground that Plaintiff's state

law claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185.  (Docket No. 1, Notice of Removal ¶¶ 7-9)  Morrissey moves to remand, arguing

2

that "[t]his is a garden variety age discrimination lawsuit brought solely pursuant to state law." (Pltf. Br. 4)

> A.   **Applicable Law**

On a motion to remand, the party seeking removal bears the burden of establishing to a 'reasonable probability' that removal is proper." Anwar v. Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009). "Any doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" Id. (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)).

Generally, removal is proper if an action originally filed in state court could have been filed in federal court. See 28 U.S.C. § 1441(a) (2000) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). Absent diversity of citizenship,[1] this occurs "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). "Where the removal is based upon federal question jurisdiction, the well-pleaded complaint rule governs." White House/Black Mkt., Inc. v. Cache Inc., No. 10 Civ. 5266(PGG), 2010 WL 2985232, at *3 (S.D.N.Y. July 27, 2010) (internal quotations marks omitted) That is, a federal question must appear on the face of the plaintiff's properly pled complaint. "This rule enables the plaintiff to be the 'master of the claim' and permits plaintiff to avoid federal jurisdiction by exclusively relying on state law." Panizza v. Mattel, Inc., No. 02 Civ. 7722 (GBD), 2003 WL 22251317, at *2 (S.D.N.Y. Sept. 30, 2003) (citing Caterpillar, Inc., 482 U.S. at 392; Hernandez v. Conriv Realty Assoc., 116 F.3d 35, 38 (2d Cir. 1997)).

---

[1] Neither party contends that diversity jurisdiction exists here.  (See Cmplt. ¶¶ 1, 2)

However, "[t]he artful-pleading doctrine, a corollary to the well-pleaded-complaint rule, rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005 (citing Rivet v. Regions Bank of La., 522 U.S. 470, 475-76 (1998); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 22 (1983); Marcus v. AT&T Corp., 138 F.3d 46, 53-54 (2d Cir. 1998)); see also Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986) ("[A] plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of 'artful pleading.'").

"The classic application of the artful pleading doctrine occurs in the context of federal preemption of state law." Travelers Indem. Co., 794 F.2d at 758; Sullivan, 424 F.3d at 272 ("The artful-pleading doctrine includes within it the doctrine of complete preemption." (footnote and citation omitted)). "The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." Rivet, 522 U.S. at 475; Panizza, 2003 WL 22251317, at *2 ("Under the complete preemption doctrine, a federal statute's preemptive force is so extraordinary that it converts an ordinary state common law claim into a federal claim for purposes of the well-pleaded complaint rule." (citing Caterpillar, Inc., 482 U.S. at 393 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987))). "When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." Sullivan, 424 F.3d at 272.  The Supreme Court has found that § 301 of the LMRA has "the requisite extraordinary preemptive force to support complete preemption." Id. Accordingly, "even though . . . plaintiff's well-pleaded complaint alleges on its face only state claims, and no one argues that

diversity of citizenship exists between the parties, if plaintiff's state 'claims are preempted by section 301, federal jurisdiction exists and the removal of his case [is] proper.'"[2] Id. (quoting Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir. 1997)).

State law claims are preempted by Section 301 of the LMRA where their resolution requires interpretation of a collective bargaining agreement.[3] See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988) ("[W]e hold that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement."). "The principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied. '[W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted.'" Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (quoting Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997)) (alterations in original) (emphasis in original); see Lingle, 486 U.S. at 405-06 ("if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute").

---

[2] "[F]ederal preemption and removal to federal court are two separate legal concepts which are often intertwined. Removal under 28 U.S.C. § 1441(a) means that a case which could have been filed in federal court is taken from state court and brought into federal court. Federal preemption means that state law is displaced by federal law and that the court which is hearing the dispute, be it state or federal, must apply federal law." Int'l Ass'n of Machinists & Aerospace Workers Local Lodge No. 967 by McCadden v. Gen. Elec. Co., 713 F. Supp. 547, 552 (N.D.N.Y. 1989).

[3] Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The mere reference to a collective bargaining agreement in a complaint is not sufficient to find preemption, however.  Similarly, "'the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'"  <u>Wynn</u>, 273 F.3d at 157 (quoting <u>Foy</u>, 127 F.3d at 233).  "The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive[, however.]"  <u>Wynn</u>, 273 F.3d at 158;  <u>see</u> <u>also</u> <u>Bellido-Sullivan v. Am. Int'l Group, Inc.</u>, 123 F. Supp. 2d 161, 169 (S.D.N.Y. 2000) ("The court appreciates that removal under the artful pleading doctrine is a complicated and somewhat murky issue.").

"[T]he starting point in determining whether a claim is preempted by Section 301 is consideration of the elements of plaintiff's stated claim.  The court then considers whether adjudication of any element of that claim requires interpretation of the parties' collective bargaining agreement."  <u>Zuckerman v. Volume Servs. Am., Inc.</u>, 304 F. Supp. 2d 365, 370 (E.D.N.Y. 2004) (citing <u>Foy</u>, 127 F.3d at 233); <u>see</u> <u>also</u> <u>Bryant v. Verizon Communs., Inc.</u>, 550 F. Supp. 2d 521, 527 (S.D.N.Y. 2008).

"In order to state a prima facie case of . . . age discrimination [under the New York State or City Human Rights Laws], a plaintiff must show that:  (1) []he was a member of a protected class, (2) []he was qualified for [the] position [at issue], (3) []he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination based on [his] membership in the protected class."  <u>Barbosa v. Continuum Health Partners, Inc.</u>, 716 F. Supp. 2d 210, 217 (S.D.N.Y. 2010) (citing <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 498 (2d Cir. 2009)); <u>Ferrante v. Am. Lung Assn.</u>, 90 N.Y.2d 623, 629 (1997) ("To support a prima facie case of age discrimination under the Human Rights Law, plaintiff must

demonstrate (1) that he is a member of the class protected by the statute; (2) that he was actively

or constructively discharged; (3) that he was qualified to hold the position from which he was

terminated; and (4) that the discharge occurred under circumstances giving rise to an inference of

age discrimination.").

       Each element of Plaintiff's claims must be considered to determine whether it

requires interpretation of a CBA.  See Zuckerman, 304 F. Supp. 2d at 370 ("The court then

considers whether adjudication of any element of that claim requires interpretation of the parties'

collective bargaining agreement.  Where plaintiff's claim can be determined without construing

the terms of the collective bargaining agreement, the claim may proceed in state court." (citing

Foy, 127 F.3d at 233)).

    **B.**    <u>**Analysis**</u>

       The parties do not appear to dispute that Plaintiff (1) was a member of a protected

class; (2) that he was qualified for his position; and (3) that he suffered an adverse employment

action in the form of a termination of his employment.  Accordingly, resolution of Plaintiff's

claims will turn on whether the "circumstances of the adverse action give rise to an inference of

discrimination based on [his] membership in the protected class."  Barbosa, 716 F. Supp. 2d at

217 (citing Leibowitz, 584 F.3d at 498).

       Based on the Complaint, it is clear that Plaintiff intends to argue that an inference

of discrimination arises from Verizon's alleged violation of its obligation, under the CBA, "to

lay off technicians according to seniority."  (Cmplt. ¶ 11)  Plaintiff contends that he "had the

most credited seniority of the technicians at the Washington Street facility," that "based on his

seniority, [he] should not have been terminated," and that he was terminated as part of Verizon's

overall strategy of "ignor[ing] its seniority list in order to lay off older technicians."  (Id. at ¶¶ 9,

11, 13).

It is likewise apparent from the Complaint that resolution of Plaintiff's claims will require interpretation of those clauses of the CBA governing credited service and the role of seniority in determining the order in which employees will be laid off.  Courts generally hold that where a state-law discrimination claim turns on application of a collective bargaining agreement's seniority provisions, the claim is preempted by Section 301 of the LMRA.  See, e.g., Fant v. New England Power Serv. Co., 239 F.3d 8, 15 (1st Cir. 2001) (finding state law discrimination claim preempted where plaintiff's claim required interpretation of CBA seniority provisions; "questions relating to qualifications and seniority usually require recourse to details that are imbedded in CBAs"); Reece v. Houston Lighting & Power Co., 79 F.3d 485, 487 (5th Cir. 1996) (finding state law discrimination claim preempted where it "turns on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA"); Bachilla v. Pac. Bell Tel. Co., No. Civ. S-07-739 RRB KJM, 2007 WL 2825924, at *8 (E.D. Cal. Sept. 25, 2007) ("[T]o the extent that Plaintiffs' discrimination claim is premised on Pacific Bell's promotion of less senior male coworkers in violation of its seniority policy, it is preempted. This is because resolution of this claim is substantially dependent on an analysis of the terms of the CBA. This claim cannot be evaluated without interpreting the seniority provisions of the CBA since the terms of Plaintiffs employment, including their eligibility for a promotion and/or transfer, are governed by the CBA."); see also Kollar v. United Transp. Union, 83 F.3d 124, 126 (5th Cir. 1996) (although complaint presented state law fraud claim, underlying issue was seniority, which was controlled by the CBA and modifying agreements; court found that resolution of plaintiffs' claim required interpretation of CBA, and, therefore, claim was preempted); Davis v. Johnson Controls, Inc., 21 F.3d 866, 868 (8th Cir. 1994) ("The district court therefore concluded, correctly . . . that the relocation of [plaintiff] to a position

commensurate with his physical limitations would require an examination of the seniority rights of both [plaintiff] and other employees under the collective bargaining agreement. . . . Accordingly, the district court correctly held that Davis's state-law claim depends upon the meaning ultimately given to the collective bargaining agreement and thus is preempted under the Lueck–Lingle doctrine."); Taylor v. Am. Airlines, Inc., 738 F. Supp. 2d 940, 945 (E.D. Mo. 2010) ("Since the state law claims in this case challenge the seniority agreement, which is explicitly incorporated into American Airlines' CBA, a resolution of this dispute would require this Court to interpret the labor contract. Therefore, plaintiffs' claims are preempted. . . ."); Richardson v. P & O Ports Balt., 2009 WL 2487080, at *3 n.3 (D. Md. Aug. 12, 2009) ("[R]eference to the seniority provisions of the CBA and interpretation of their terms would be necessary. . . . Accordingly, the state law causes of action are preempted. . . .").

      With respect to "credited service," the Settlement Agreement (a document incorporated into the CBA)[4] provides as follows:

> For an employee who becomes employed by Service Company in the new job title(s) and/or classification(s) to be created under the Settlement Agreement, seniority for all purposes under the Labor Agreements other than as specified in Section D. Pension and Retiree Medical above, shall be determined by reference to NCS Date for pension eligibility purposes under the Verizon Pension Plan New York and New England Associates or the Verizon Pension Plan Mid-Atlantic Associates, as applicable.

(Clarke Aff., Ex. A, ¶ H)

      With respect to layoffs, Section 14.02 of the CBA states:

---

[4] In support of its Notice of Removal, Defendant submitted an affidavit from Gerald Clarke, a senior staff consultant in Verizon's Labor Relations Department. Clarke asserts that "[e]ffective August 3, 2008, Verizon entered into an Agreement with the Communications Workers of America, AFL-CIO District One ('Collective Bargaining Agreement'). Incorporated into this Collective Bargaining Agreement was a 2008 Memorandum of Understanding, Settlement Agreement (Verizon Business) ('2008 MOU')." Attached to the Clarke Affidavit are portions of the CBA and 2008 MOU.

9

(1) If a layoff of employees is made effective, the Company shall determine the occupational classifications, Areas for Upstate and layoff subdivisions for Downstate affected. . . .

    (b) The Company shall lay off employees in the inverse order of seniority (determined by net credited service) by each affected Area for Downstate. . . .

    For purpose of this Article the following layoff subdivisions shall exist for Downstate:

        New York City. . . .

(2) Employees in the affected occupational classifications with five (5) years or less seniority shall be laid off to the extent necessary.

(3) Thereafter, employees in the Group set forth in Article 31 in which any affected occupational classification is listed shall be laid off to the extent necessary.  However, if an employee in the Group whose seniority would otherwise cause his layoff cannot be replaced by an employee in the same work group who is qualified to serve as a replacement with only reasonable training, the next senior employee will be laid off.

(Clarke Aff., Ex. A, Art. 14)

    Because a critical aspect of Plaintiff's age discrimination claims – as he chose to plead them – is his allegation that Verizon terminated his employment in violation of its contractual "obligat[ion] to lay off technicians according to seniority" (Cmplt. ¶ 11), "resolution of [Plaintiff's] state-law claim depends on an interpretation of the collective-bargaining agreement."  As a result, his state law claims are pre-empted by Section 301 of the LMRA. Wynn, 273 F.3d at 157 (quoting Foy, 127 F.3d at 233).

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion to remand is DENIED.  The Clerk

of the Court is directed to terminate the motion (Docket No. 13).

Dated:  New York, New York                    SO ORDERED.
       July 7, 2011

                                         Paul G. Gardephe
                                         United States District Judge